UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
UNITED STATES OF AMERICA,

          -against-                    <u>MEMORANDUM AND ORDER</u>
                                       12-CR-0632 (JS)(ARL)
MELVIN CWIBEKER, also known as
"Mel Cwibeker," RICHARD HURWITZ,
SHIMON METZ, and MARK SAMUEL,

               Defendants.
--------------------------------X
APPEARANCES
For the Government: Charles Peter Kelly, Esq.
                    United States Attorneys Office
                    Eastern District of New York
                    610 Federal Plaza
                    Central Islip, NY 11722

For CWIBEKER:       John Martin, Esq.
                    Robert Alexander Del Giorno
                    Garfunkel Wild
                    111 Great Neck Road
                    Great Neck, NY 11021

                    Bruce Loren Wenger, Esq.
                    Wenger & Arlin Esqs. LLP
                    20 Vesey Street
                    New York, NY 10007

SEYBERT, District Judge:

          Before the Court is the motion of Melvin Cwibeker ("Cwibeker" or "Defendant") to suppress the evidence seized following the Government's March 26, 2012 search of his residence and home office. For the following reasons, the Court DENIES Defendant's motion.

<u>BACKGROUND</u>

Defendant is charged with one count of Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349, one count of Healthcare Fraud in violation of 18 U.S.C. § 1839, one count of Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349, three counts of Aggravated Identity Theft in violation of 18 U.S.C. § 1028A, one count of Money Laundering in violation of 18 U.S.C. § 1956(a), three counts of Engaging in Unlawful Monetary Transactions in violation of 18 U.S.C. § 1957, and one count of Obstruction of a Federal Audit in violation of 18 U.S.C. § 1516. (See Superseding Indictment, Docket Entry 83.) The charges arise from Defendant's role in a scheme that involved submitting claims to Medicare for fictitious or otherwise non-compensable patient services.

I.   <u>The Investigation</u>

Defendant is the owner of Mel Cwibecker, D.C., located in Woodmere, New York. Defendant is a licensed chiropractor who provides services to residents at various assisted living facilities in Brooklyn, Queens, the Bronx, Westchester, and Richmond Counties. Many of his patients are covered by Medicare. Thus, to receive compensation for services rendered to those patients, Defendant is required to submit a claim to Medicare. The claim form requires the provider to certify that the services were "medically indicated and necessary for the health of the

patient and were personally furnished." See Health Insurance Claim Form (Form HFCA-1500), 2, available at http://www.usrds.org/forms/ 08_1500_Health_Insurance_Claim.pdf.

In 2009, Safeguard Services, a private company contracted by the United States Government to audit and analyze certain financial data related to Medicare claims, recommended that officials at the United States Department of Health and Human Services, Offices of the Inspector General ("DHHS-OIC") investigate Defendant's business. DHHS-OIC Special Agent Elysia Doherty ("Agent Doherty") led the ensuing investigation. Agent Doherty inspected Defendant's Medicare billing records, conducted visual surveillance of Defendant, and interviewed Defendant's patients. (Doherty Aff., Docket Entry 92-4, Exhibit D, ¶¶ 19, 23.)

Agent Doherty's investigation revealed evidence of a number of days where the medical services claimed to have been rendered by Defendant would have been impossible to perform in a single day. (Doherty Aff. ¶ 19.) Between January 2006 and December 2009, Agent Doherty concluded that Defendant was submitting claims to Medicare for treating between 100 and 250 patients per day. (Doherty Aff. ¶ 19.) Doing so would have required Defendant to visit and provide compensable care at assisted living facilities in the Bronx, Brooklyn, New Rochelle, Mohegan Park in Peekskill, Queens, and other counties in a single

day.  (Doherty Aff. ¶ 19.)  Agent Doherty also learned that Defendant had claimed to have treated over 1,000 patients between June 17, 2010 and July 1, 2010, while data from his passport showed that he had traveled to Israel during those same dates.  (Doherty Aff. ¶ 22.)  In another instance, Agent Doherty found that Defendant had filed claim forms seeking reimbursement for services rendered between January 24, 2010 and January 28, 2010, while data from his passport showed that Defendant had traveled to Barbados during those dates.  (Doherty Aff. ¶ 21.)  Moreover, a DHHS-OIC agent spoke with a Medicare beneficiary that indicated that she had been seen by Defendant on one occasion.  Defendant had submitted claims seeking reimbursement for twenty-six treatments to that beneficiary.  (Doherty Aff. ¶ 24.)

II.  <u>The Search Warrant</u>

In March 2012, working with the United States Attorneys Office for the Eastern District of New York, Agent Doherty signed an affidavit in support of an application for a warrant to search Defendant's home office for evidence related to the suspected Health Care Fraud (the "Doherty Affidavit," or the "Affidavit"). The Affidavit sets out, in detail, the evidence already amassed against Defendant and the laws that he was suspected of violating. The Affidavit concludes, "your deponent respectfully requests that this Court issue a search warrant . . . authorizing the seizure of the items described in Attachment B, which constitute evidence,

contraband, fruits, and other items related to violations of the specified federal offenses."[1]  (Doherty Aff. ¶ 36.)  Magistrate Judge William Wall, on March 22, 2012, found that the Affidavit established probable cause to search Defendant's home office and authorized the requested search warrant (the "Search Warrant"). (See Search Warrant, Docket Entry 92-2.)

Attachment B to the Search Warrant listed the items to be seized.  Eleven categories of items were listed:

1. Documents constituting, concerning, or relating to patient files, bills, invoices, and claims for payment or reimbursement for services billed, provided, or alleged to have been provided to patients to include, but not limited to, reimbursement claim forms (under Medicare), explanations of medical benefits, dispensing orders, detailed written orders or prescriptions, certificates of medical necessity, information from the treating physician(s) concerning the patients' diagnosis, and proof of delivery of services and/or items that were submitted by any representative acting on behalf of CWIBEKER or for reimbursement by Medicare;

2. All contracts, agreements, papers, and affiliated records constituting, concerning, or relating to providing of services by CWIBEKER or any representative acting on their behalf, to include, but not limited to, contracts, invoices, and receipts;

3. All letters constituting, concerning, or relating to efforts to collect co payments [sic] and/or deductibles for individuals that receive health care coverage from Medicare;

---

[1] The Affidavit also requested that the warrant application be sealed, because the "premature disclosure of the contents of this Affidavit and related documents may have a negative impact on this continuing investigation and may jeopardize its effectiveness."  (Doherty Aff. ¶ 37.)

4. All correspondence and cancelled checks relating to notice of overpayment and request for refunds from Medicare;

5. All correspondence to and from Medicare including, but not limited to, manuals, advisories, newsletters, bulletins, and publications;

6. All correspondence to and from patients regarding Medicare;

. . .

7. Financial books and records and documents constituting, concerning, or relating to CWIBEKER;

. . .

8. All contracts, agreements, logs, lists or papers affiliated with any medical professional services, referrals, or storage for CWIBEKER to include, but not limited to, records of payment by CWIBEKER;

9. All employee files and resumes including, but not limited to, any handwritten or computer files listing any and all employee names, addresses, telephone numbers, and background information for all current and former employees; applications or employment and letters of references;

10. All contracts, agreements or paper affiliated with any outside medical insurance billing company;

11. Additionally, all computer equipment and the items, listed above, which are contained in any computer equipment as follows, and pertain to the above listed persons, business, or entities:

. . .

    (m) Various file "directories" and the individual files they contain, recently deleted data; scanning storage areas for deliberately hidden files; all of which constitute evidence, fruits and instrumentalities of violations and attempted violations of, inter alia, Title 18 United States Code, Section 1347 (Health Care Fraud).

III. <u>Execution of the Search Warrant and Defendant's Challenge</u>

On March 26, 2012, Agent Doherty convened a team of ten officers a short distance from Defendant's home to brief them on the operation. (Suppression Hr'g Tr. ("Hr'g Tr.") 11:6-8, Oct. 2, 2014.) Agent Doherty explained to the officers the suspected nature of Defendant's fraud, the relevant time frame, and the objective of the search. (Hr'g Tr. 11:6-21:22) Each officer was given a copy of the Search Warrant and its attachments, as well as an "Operational Plan." (Hr'g Tr. 18:3-9.) The Operational Plan summarized the investigation and laid out the parameters of the search. It read, in part, "[f]rom approximately January 2006 to present, Mel Cwibeker performed various chiropractic manipulative treatment on Medicare beneficiaries at various Assisted Living Facilities . . . . Most of these services were never received that were not medically necessary. On a given day, Mel Cwibeker would bill as if he has seen approximately 269 Medicare beneficiaries in four different ALFs across Queens, Brooklyn, and the [sic] 761 Central Avenue." (Hr'g Tr. 10:2-12.) While Agent Doherty made copies of the Affidavit available, she did not distribute them to the officers. (Hr'g Tr. 92:1-5.)

After briefing, Agent Doherty led the team in the execution of the Search Warrant. Upon entering the residence, she learned that Defendant's office occupied the basement. She labeled

some areas of the home "Do Not Search," but the team briefly searched areas of the home beyond the basement for materials related to Defendant's practice to no avail. (Hr'g Tr. 30:8-32:24.) For the next six hours, the team searched Defendant's home office under the supervision of Agent Doherty. During that time, Agent Doherty reaffirmed, clarified, and answered questions regarding the permissible scope of the search. (Hr'g Tr. 41:15-21.) Approximately seven agents searched Defendant's office. (Hr'g Tr. 38:17-19.) At the search's conclusion, Agent Doherty seized twenty boxes of documents that she felt were within the scope of the Magistrate's authorization. (Hr'g Tr. 38:22-39:6.)

The following day, Agent Doherty reviewed the roughly 28,000 documents seized. Four percent of those documents fell outside the scope of the Search Warrant. (Hr'g Tr. 42:9-25.)

On May 9, 2014, Cwibeker moved to suppress the physical evidence seized during the 2012 search on the grounds that the Search Warrant was not supported by probable cause, and that the Search Warrant lacked the particularity required by the Fourth Amendment. (See First Mot. to Suppress, Docket Entry 87.) The Court, on June 18, 2014, denied Defendant's motion, finding the Search Warrant supported by probable cause and the particularity requirement satisfied. (Minute Entry, Docket Entry 90, denying Mot. to Suppress.) The Court's conclusion with respect to the Search Warrant's particularity, however, was based in part on the

mistaken belief that the Doherty Affidavit was attached to the Search Warrant. Upon realizing its error, the Court granted Defendant's motion for reconsideration. (See Def. Mot. For Reconsideration, Docket Entry 92; See Aug. 22, 2014 Minute Entry). The Court held an evidentiary hearing on October 2, 2014 (See Minute Entry, Docket Entry 103), and received further submissions from both Defendant and the Government. (Docket Entries 104, 105, 106).

DISCUSSION

The Court will first consider whether the Search Warrant lacked particularity in its description of the items to be seized, as required by the Fourth Amendment. In so doing, the Court relies only upon the Search Warrant, its Exhibit A, which describes the place to be searched, and its Exhibit B, which describes the items to be seized. The Court does not consider the Doherty Affidavit because it was neither incorporated in nor attached to the Search Warrant. See United States v. Rosa, 626 F.3d 56, 64 (2d Cir. 2010) (holding that courts "may no longer rely on unincorporated, unattached supporting documents to cure an otherwise defective search warrant"); United States v. Cohan, 628 F. Supp. 2d 355, 364 n.4 (E.D.N.Y. 2009) ("[B]ecause particularity deals with the extent to which the executing officer's discretion is cabined, the relevant perspective for that analysis is that of those at the scene of the search, who do not have meaningful access to the

affidavit unless it is incorporated and attached." (citations omitted)).  Next, the Court discusses whether suppression of the evidence uncovered during the search is the appropriate remedy for any defect in the Search Warrant.

I.  Particularity

The Warrants Clause of the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. CONST. amend. IV (emphasis added).  The principal evil that the Fourth Amendment sought to remedy was the general warrant, whereby English royal officials would "search and seize whatever and whomeover they pleased while investigating crimes or affronts to the Crown." Ashcroft v. al-Kidd, --- U.S. ----, 131 S. Ct. 2074, 2084, 179 L. Ed. 2d 1149, 1160 (2011).  Particularity, therefore, "is the requirement that the warrant [] clearly state what is sought." Cohan, 628 F. Supp. 2d at 359.

A warrant is sufficiently particular if it "enable[s] the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize."  United States v. George, 975 F.2d 72, 75 (2d Cir. 1992). The Second Circuit recently identified three components of the particularity requirement.  First, "a warrant must identify the specific offense for which the police have established probable

10

cause." United States v. Galpin, 720 F.3d 436, 445 (2013) (citing United States v. Bianco, 998 F.2d 1112, 1116 (2d Cir. 1993)). Second, "a warrant must describe the place to be searched." Id. at 445-46 (citing United States v. Voustianiouk, 685 F.3d 206, 211 (2d Cir. 2012)). Third, a "warrant must specify the 'items to be seized by their relation to designated crimes.'" Id. at 446. (quoting United States v. Williams, 592 F.3d 511, 519 (4th Cir. 2010)).

Where the evidence, fruits, or instrumentalities to be seized are documents or computer data, the courts recognize the difficulties that the particularity requirement imposes on the Government, and have refused invitations to use those difficulties to render legitimate government investigations impotent. See, e.g., United States v. Cioffi, 668 F. Supp. 2d 385, 391 (E.D.N.Y. 2009) ("[D]ocumentary evidence may be difficult to describe ex ante with the same particularity as a murder weapon or stolen property."); United States v. Riley, 906 F.2d 841, 845 (2d Cir. 1990) ("It is true that a warrant authorizing seizure of records of criminal activity permits officers to examine many papers in a suspect's possession to determine if they are within the described category. But allowing some latitude in this regard simply recognizes the reality that few people keep documents of their criminal transactions in a folder marked 'drug records.'"); Cohan, 628 F. Supp. 2d at 362 ("[I]t makes no sense to analogize the

search warrant in this case to cases involving drugs or theft, . . . because the items to be seized in those cases--drugs and jewelry, for instance--are amenable to a more precise description than are corporate records revealing fraud." (alteration and ellipsis in original) (quoting <u>United States v. Poulsen</u>, No. 06-CR-0129, 2008 WL 271661, at *5 (S.D. Ohio Jan. 30, 2008)). Instead, courts tolerate greater ambiguity where a more precise description of the items subject to seizure is not possible. <u>United States v. Regan</u>, 706 F. Supp. 1102, 1114 (S.D.N.Y. 1989).

The Government argues that three limitations in Attachment B of the Search Warrant satisfy the requirement that the Search Warrant specify the items to be seized and their relation to the designated crimes. <u>First</u>, Attachment B mentions the crime being investigated. <u>Second</u>, many of the numbered paragraphs in Attachment B contain their own, "express interior limitations." <u>Third</u>, Attachment B limits the materials to be seized to those "concerning Cwibeker." (Gov't Mem., Docket Entry 88, at 2.)

Attachment B makes only one mention of the crime being investigated. Paragraph 11 begins, "[a]dditionally, all computer equipment and the items, listed above, which are contained in any computer equipment as follows, and pertain to the above listed persons, business, or entities . . ." A host of subparagraphs

follow, many standard specifications of the types of electronic materials subject to search.  The final item in the list states, "(m) [v]arious file 'directories' and the individual files they contain, recently deleted data; scanning storage areas for deliberately hidden files; all of which constitute evidence, fruits and instrumentalities of violations and attempted violations of, <u>inter alia</u>, Title 18 United States Code, Section 1347 (Health Care Fraud)."

While the Government contends that this clause limits the entire list of items to be seized, (Gov't Mem. at  9 ("In fact, . . . the Cwibeker warrant's attachment, after the final section and after a semi-colon, limits the documents to be seized to those which 'constitute evidence, fruits and instrumentalities of violations' of health care fraud.")), the Court disagrees. Applying a clause contained in a subsection of paragraph eleven to paragraphs one through ten requires a tortured reading of the numbered list.  While it is at least conceivable that the limitation in paragraph eleven was intended to apply to the entirety of the document, one may just as convincingly argue that the presence of the limitation in paragraph eleven and not in paragraphs one through ten suggests the opposite, that paragraphs one through ten are <u>not</u> bound by that limitation.[2]  See <u>United</u>

_____

[2] Because the Court concludes that the limitation related to violations of 18 U.S.C. § 1347 does not apply to the entirety of

States v. Otero, 563 F.3d 1127, 1133 (10th Cir. 2009). Most troublesome is that the limitation falls within a paragraph related solely to computerized or digital data. As such, "an officer tasked with conducting a physical search might well miss this supposed limit." United States v. Zemlyansky, 945 F. Supp. 2d 438, 454 (S.D.N.Y. 2013).

Next, the Government points out that a number of the paragraphs contain their own, internal limitations. (Gov't Mem. at 9.) More specifically, many of the listed items call exclusively for documents concerning Defendant's relationship with Medicare. The Court considers these limitations significant, but ultimately unavailing. Because a handful of the numbered paragraphs contain no such limitation, the Court cannot conclude

---

the items listed, the Court does not reach the question of whether such a broad recitation of the law is even sufficient to satisfy the requirement that a warrant identify the specific offenses for which probable cause is established. After all, the Second Circuit has recently recognized that its sister Circuits have held that warrants that identify statutory catchall provisions, such as mail fraud or conspiracy statutes may nonetheless fail the particularity or breadth requirements. See Galpin, 720 F.3d at 445 n.5 (citing United States v. Leary, 846 F.2d 592, 594 (10th Cir. 1988) (warrant authorizing search of export company's business records for violation of the "Arms Export Control Act, 22 U.S.C. § 2778, and the Export Administration Act of 1979, 50 U.S.C. App. § 2410," held overbroad); Voss v. Bergsgaard, 774 F.2d 402 (10th Cir. 1985) (warrant specifying 18 U.S.C. § 371, the general federal conspiracy statute, held overbroad); United States v. Roche, 614 F.2d 6, 8 (1st Cir. 1980) (concluding that a limitation of a search to evidence relating to a violation of 18 U.S.C. § 1341, the general mail fraud statute, provides "no limitation at all")).

that these interior limitations save the document. For the same reason that the Court will not read the Health Care Fraud limitation in paragraph 11 to apply throughout the document, the Court will not read, for example, the "regarding Medicare" limitation in paragraph 6 to apply to paragraph 7, which authorizes the seizure of all "[f]inancial books and records." See Otero, 563 F.3d 1127, 1133 (10th Cir. 2009) ("In fact, the presence of limitations in each of the first five paragraphs but absence in the second four suggests that the computer searches are not subject to those limitations."). As a result, the Court finds that these interior limitations are insufficient to satisfy the Fourth Amendment's particularity requirement.

Finally, the Government argues that language in Attachment B limits the search to items "concerning CWIBEKER." (Gov't Mem. at 2.) As Defendant points out, however, the Search Warrant never defines "CWIBEKER" as Defendant. Accordingly, officers executing the search--in Defendant's home, moreover--may have interpreted this limitation as authorization to seize items concerning any member of Defendant's family.

In sum, the Court finds that neither the Search Warrant's limited mention of the crime being investigated, nor the "regarding Medicare" phrase present in some, but not all of the numbered paragraphs, nor the "concerning CWIBEKER" limitation are

sufficient to clearly state what is sought.  As a consequence, the Search Warrant fails for lack of particularity.

II.  The Good Faith Exception

"The fact that a Fourth Amendment violation occurred . . . does not necessarily mean that the exclusionary rule applies."  Herring v. United States, 555 U.S. 135, 140, 129 S. Ct. 695, 700, 172 L. Ed. 2d 496, 504 (2009).  Indeed, the exclusionary rule is one of "last resort," not "first impulse." Id., 129 S. Ct. at 700, 82 L. Ed. 2d at 504.

The good faith rule set forth in United States v. Leon counsels that the exclusionary rule will not apply to "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant."  468 U.S. 897, 922, 104 S. Ct. 3405, 3420, 82 L. Ed. 2d 677, 698 (1984).  Thus, exclusion is appropriate only where "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."  Id. at 922 n.23, 104 S. Ct. at 3420 n.23, 82 L. Ed. 2d at 698 n.23.  Evaluation of the officer's objective reasonableness occurs in light of "all of the circumstances." Herring, 555 U.S. at 145, 129 S. Ct. at 703, 82 L. Ed. 2d at 508 (internal quotation marks omitted).

While the Government bears the burden of demonstrating the objective reasonableness of the officer's good faith reliance on the invalidated warrant, "[s]earches pursuant to a warrant will

rarely require any deep inquiry into reasonableness, for a warrant
issued by a magistrate normally suffices to establish that a law
enforcement officer has acted in good faith in conducting the
search." Leon, 468 U.S. at 922, 104 S. Ct. at 3420, 82 L. Ed. 2d
at 698 (quoting United States v. Ross, 456 U.S. 798, 823 n.32, 102
S. Ct. 2157, 2172 n.32, 72 L. Ed. 2d 572, 593 n.32 (1982));
Messerschmidt v. Millender, --- U.S. ----, 132 S. Ct. 1235, 1245,
182 L. Ed. 2d 47, 58 (2012) ("[T]he fact that a neutral magistrate
has issued a warrant is the clearest indication that the officers
acted in an objectively reasonable manner, or as we have sometimes
put it, in objective good faith." (internal quotation marks
omitted)). Accordingly, "[m]ost such searches will be upheld."
United States v. Rickard, 534 Fed. App'x 35, 37 (2d Cir. 2013).

It was against this presumption of reasonableness that
the Supreme Court identified four circumstances that would trigger
application of the exclusionary rule:

> (1) where the issuing magistrate has been
> knowingly misled; (2) where the issuing
> magistrate wholly abandoned his or her
> judicial role; (3) where the application is so
> lacking in indicia of probable cause as to
> render reliance upon it unreasonable; and (4)
> where the warrant is so facially deficient
> that reliance upon it is unreasonable.

United States v. Moore, 968 F.2d 216, 222 (2d Cir. 1992) (citing
Leon, 468 U.S. at 923, 104 S. Ct. at 3420-21; 82 L. Ed. 2d at 698-
99); United States v. Clark, 638 F.3d 89, 100 (2d Cir. 2011);

United States v. Romain, No. 13-CR-0724, 2014 WL 6765831, at *6 (S.D.N.Y. Dec. 1, 2014).

Only the fourth trigger--regarding facial deficiency-- bears on the instant case. The Court has already found that Judge Wall was not misled and that the application was sufficient to establish probable cause. (See Minute Entry denying Mot. to Suppress.) And nothing in the record even remotely suggests that Judge Wall "wholly abandoned" his judicial role.

"Not every facially deficient warrant . . . will be so defective that an officer will lack a reasonable basis for relying upon it." Rosa, 626 F.3d at 66; Moore, 968 F.2d at 223 (warrant issued in absence of an oath or affirmation did not trigger fourth exception to good faith rule). Given the interior limitations in many parts of the Search Warrant calling for documents "regarding Medicare," the defect in the warrant was not so egregious as to preclude reasonable reliance on the Magistrate's judgment. United States v. Riccardi, 405 F.3d 852, 864 (10th Cir. 2005) (warrant's language containing interior limitations similar to those in this case held defective, but not "so flagrant or obvious that the executing officers [could] not reasonably presume it to be valid." (internal quotation marks and citation omitted) (alteration in original)). Moreover, the complex nature of the crime being investigated and the type of evidence sought might lead an ordinary officer to expect to find broader categories of items to be seized.

See United States v. Levy, No. 11-CR-0062, 2013 WL 664712, at *10 (S.D.N.Y. Feb. 25, 2013) ("Given the nature of the complex financial crimes and conspiracy alleged, executing officers would reasonably expect to find fairly broad categories of financial documents to be seized."). As such, the Court cannot say that Agent Doherty and her team acted unreasonably in accepting the Search Warrant as valid.

Defendant relies on Groh v. Ramirez to suggest that the officers here may not have reasonably thought the Search Warrant valid. 540 U.S. 551, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004). The search warrant in Groh, however, was devoid of any enumeration of the items to be seized, and it is well settled that a valid search warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Here, the deficiencies are far more nuanced. See Rosa, 626 F.3d at 66 ("[T]he defective warrant in this case certainly did not have the glaring deficiencies of the itemless warrant in Groh."); United States v. Jacobson, 4 F. Supp. 3d 515, 527, (E.D.N.Y. 2014) ("[E]ven if paragraph one were insufficiently particular, it was not so facially deficient as to preclude the application of the good faith rule.").

Apart from the objectively reasonable inquiry, the Second Circuit recently highlighted a second consideration: "application of the exclusionary rule requires the additional

determination that the officers' conduct was 'sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Rosa, 626 F.3d at 66 (quoting Herring, 555 U.S. at 144, 129 S. Ct. at 702, 82 L. Ed. 2d at 507).

The Court struggles to find any conduct by Agent Doherty or her team members bearing the culpability required to warrant exclusion of the evidence seized. To the contrary, much of Agent Doherty's behavior--both before application and during execution of the Search Warrant--supports the Court's decision to apply the good faith exception. First, Agent Doherty consulted with United States Attorneys prior to application for the search warrant, presumably at least in part to ensure that the rules were being followed. See Riccardi, 405 F.3d at 864 ("By consulting the prosecutor, [the executing officers] showed their good faith in compliance with constitutional requirements."). Second, the Doherty Affidavit set forth far more detail than might ordinarily be required to establish probable cause, also in an apparent effort to ensure compliance with the applicable rules. Third, prior to execution of the Search Warrant, Agent Doherty circulated her "Operational Plan," which cabined the permissible scope of the investigation far tighter than the constitutionally defective Attachment B. Fourth, Agent Doherty led the execution of the Search Warrant, and nothing suggests that she relied upon the

defective Search Warrant over her knowledge of the investigation
and the limits contemplated by the Affidavit. See Rosa, 626 F.3d
at 66 ("Because there is no evidence that Investigator Blake and
his team of officers actually relied on the defective warrant, as
opposed to their knowledge of the investigation and the
contemplated limits of the town justice's authorization, in
executing the search, the requisite levels of deliberateness and
culpability justifying suppression are lacking"). Finally, and
perhaps most importantly, the results of the execution of the
Search Warrant convince the Court that the search was conducted in
good faith and devoid of any conduct warranting exclusion. Despite
Defendant's specious challenges to each and every non-responsive
item seized, the Court, viewing the search in its entirety and in
light of the surrounding circumstances, does not find a six-hour
search resulting in an error rate of less than five percent
offensive to the Fourth Amendment.

In United States v. Zemlyansky, the court held that the
good faith exception to the exclusionary rule did not apply to
evidence seized pursuant to a warrant that was both overbroad and
not sufficiently particular. 944 F. Supp. 2d at 476. The court
found that the officers who executed the search could not have
reasonably relied upon the facially deficient warrant because the
law surrounding the particularity and breadth requirements was
well settled. Id. at 472. While the Court agrees with

_Zemlyansky's_ statement of the law, it finds that the language of the Search Warrant in this case, particularly the "regarding Medicare" limitations, renders the constitutionality of the Search Warrant a far closer call than the one in _Zemlyansky_, and it would be improper to charge Agent Doherty and her team with knowledge that the warrant would later be invalidated.

Moreover, while the facts surrounding the execution of the warrant in _Zemlyansky_ supported exclusion of the evidence, the execution of the Search Warrant here counsels for the opposite result. In _Zemlyansky_, the agent who applied for the warrant neither participated in the search nor meaningfully relayed the contents of his affidavit to those conducting the search. _Id._ at 465-66. In contrast, Agent Doherty both summarized the contents of her affidavit to the search team and led the search in a manner consistent with the authorization contemplated by that Affidavit. More importantly, the officers in _Zemlyanski_ _actually_ _relied_ upon the defective warrant. _Id._ at 474 ("The binders weren't taken based on my understanding of the case, what it is that they were looking for, based on the search warrant and rider." (internal quotation marks omitted)). Here, there is no indication that the defects in the Search Warrant, rather than Agent Doherty's knowledge of the case, influenced the parameters of the search.

Accordingly, the Court finds that the Search Warrant was not so facially deficient as to render reliance upon it

unreasonable. That Agent Doherty appears to have acted in good faith in her application for the Search Warrant, her instruction of its parameters to the search team, and her execution of the Search Warrant further supports the Court's conclusion that suppression of the evidence seized is inappropriate.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to suppress [Docket Entry 104] is DENIED.


                              SO ORDERED.


                              /s/ JOANNA SEYBERT
                              Joanna Seybert, U.S.D.J.

Dated:     December   31  , 2014
           Central Islip, NY