```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
UNITED STATES OF AMERICA,

           -against-                          MEMORANDUM AND ORDER
                                              12-CR-0632 (JS)(ARL)
MELVIN CWIBEKER, also known as
"Mel Cwibeker," RICHARD HURWITZ,
SHIMON METZ, and MARK SAMUEL,

                    Defendants.
--------------------------------------X
```

APPEARANCES
For the Government: Charles Peter Kelly, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    610 Federal Plaza
                    Central Islip, NY 11722

For CWIBEKER:       John Martin, Esq.
                    Robert Alexander Del Giorno, Esq.
                    Garfunkel Wild
                    111 Great Neck Road
                    Great Neck, NY 11021

                    Bruce Loren Wenger, Esq.
                    Wenger & Arlin Esqs. LLP
                    20 Vesey Street
                    New York, NY 10007

SEYBERT, District Judge:

Before the Court is the motion of defendant Melvin Cwibeker ("Cwibeker" or "Defendant") to unseal a portion of the grand jury minutes or, alternatively, to dismiss counts four through six of the Superseding Indictment (Docket Entry 69.) For the following reasons, Defendant's motion is DENIED.

BACKGROUND

Defendant is charged with one count of Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349, one count of Health Care Fraud in violation of 18 U.S.C. § 1347, one count of Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349, three counts of Aggravated Identity Theft in violation of 18 U.S.C. § 1028A, one count of Money Laundering in violation of 18 U.S.C. § 1956(a), three counts of Engaging in Unlawful Monetary Transactions in violation of 18 U.S.C. § 1957, and one count of Obstruction of a Federal Audit in violation of 18 U.S.C. § 1516. (See Superseding Indictment, Docket Entry 83.)

The crimes of which Defendant is accused relate to his role in a scheme that involved billing Medicare for fictitious or otherwise non-compensable treatments purportedly rendered to residents of various assisted living facilities. (Superseding Indictment, ¶ 10.) According to the Superseding Indictment, Defendant and his co-conspirators would visit various assisted living facilities across Long Island and New York City, but they would not provide any Medicare reimbursable services during those visits. (Superseding Indictment, ¶ 11.) After each visit, Defendant or a co-conspirator would generate a list of all the patients purportedly treated that day. (Superseding Indictment, ¶ 12.) In some cases, the list would include every resident in a given facility. Defendant would use that list to

2

submit to Medicare fictitious claims seeking reimbursement for treatments that Defendant knew had not been performed. (Superseding Indictment, ¶ 12.)

In one instance, investigators interviewed a resident of one of the assisted living facilities that Defendant frequented. While the resident recalled being treated by Defendant on one occasion, Defendant had submitted claim forms to Medicare for twenty-six separate and compensable treatments of that resident. (Doherty Aff., Docket Entry 92-4, Exhibit D, ¶ 24.)

The Medicare reimbursement form requires the medical provider to submit information identifying the patient to whom treatment was rendered, including their name, date of birth, PIN, and Social Security Number. (Superseding Indictment, ¶ 16.) Defendant's charges of Aggravated Identity Theft thus arise from his alleged unlawful use of the means of identification of the residents that he fraudulently claimed to have treated. The Government does not dispute that Defendant legally obtained this information from the residents in the first instance, and he therefore did not "steal" the identities as the term is colloquially used. Nonetheless, the Government asserts, Defendant's subsequent unlawful <u>use</u> of those means of identification to submit fraudulent Medicare claims is sufficient to sustain a charge of Aggravated Identity Theft under 18 U.S.C. § 1028A.

On December 8, 2013, Defendant moved to unseal a portion of the grand jury minutes or, in the alternative, to dismiss the Aggravated Identity Theft counts. Defendant insists that the grand jury minutes must be inspected because it is likely that the grand jury was not properly instructed on the effect that the consent of the residents to the use of their identifying information could have on a charge of Aggravated Identity Theft. (Def. Mot., Docket Entry 69; Martin Declaration, Docket Entry 69-1.) The Government opposed Defendant's motion on January 22, 2014. (Gov't's Mem. in Opp., Docket Entry 73.) Defendant Replied on February 7, 2014. (Def's Reply, Docket Entry 77.)[1]

DISCUSISON

I. Motion to Unseal the Grand Jury Minutes

The Court will first discuss the legal standard applicable to a motion to unseal the minutes of grand jury proceedings before applying that standard to Defendant's motion.

---

[1] In the original Indictment, the lone Aggravated Identity Theft charge was Count Two, and Defendant's motion therefore corresponded to that Count Two. After the motion was docketed, a second grand jury returned the Superseding Indictment, which contains charges of Aggravated Identity Theft in Counts Four, Five, and Six. On May 8, 2014, Defendant requested that his motion be amended to correspond to the appropriate counts in the Superseding Indictment. (Ltr. Mot. to Amend., Docket Entry 86.) The Court granted Defendant's motion on May 9, 2014. (Electronic Order Re. Ltr. Mot. to Amend.) Accordingly, the Court understands Defendant's motion to concern Counts Four, Five, and Six of the Superseding Indictment.

4

A.  Legal Standard

A motion to unseal testimony before a grand jury asks a court to defy the "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts." United States v. Procter & Gamble Co., 356 U.S. 677, 681, 78 S. Ct. 983, 986, 2 L. Ed. 2d 1077 (1958).  "This time-honored policy of secrecy has been the most essential, indeed indispensable, characteristic of grand jury proceedings."  In re Grand Jury Investigation of Cuisinarts, Inc., 665 F.2d 24, 28 (2d Cir. 1981). More than a few principles of public policy justify the need for the continued secrecy of grand jury proceedings:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

Douglas Oil Co. v. Petrol Stops Nw., 441 U.S. 211, 219, 99 S. Ct. 1667, 1673, 60 L. Ed. 2d 156 (1979) (alteration in original) (quoting United States v. Rose, 215 F.2d 617, 628-29 (3d Cir. 1954)).

The acute need for the secrecy of grand jury proceedings counsels that grand jury minutes should only be unsealed in limited circumstances. The Federal Rules of Criminal Procedure contemplate that a court may authorize the disclosure of the proceedings held before a grand jury "at the request of a defendant who shows that a ground may exist to dismiss the indictment." FED. R. CRIM. P. 6(e)(3)(E)(ii). The Supreme Court has fashioned a three-part analysis to guide courts in determining when to disrupt the secrecy of grand jury proceedings: "[p]arties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice . . . that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." Douglas Oil Co., 441 U.S. at 222, 99 S. Ct. at 1674, 60 L. Ed. 2d at 167. In short, a defendant must show a "particularized need" for the Court to unseal the grand jury minutes. United States v. Weinstein, 511 F.2d 622, 627 (2d Cir. 1975).

B.  Application

Defendant asserts that a particularized need exists to inspect the grand jury minutes because a conversation between his counsel and the Assistant United States Attorney who instructed the grand jury suggested that the Assistant United States Attorney incorrectly (though albeit in good faith) instructed the grand jury on the elements of Aggravated Identity Theft. (Martin Decl.,

6

¶¶ 7-8.)  Specifically, Defendant contends that it is "exceedingly likely" that the grand jury was not instructed that a charge of Aggravated Identity Theft requires proof that the person whose identity was allegedly used did not consent to its use.  (Martin Decl., ¶ 14.)

In response, the Government argues that the non-consent of the patients whose identities were used is not an element of Aggravated Identity Theft.  (Gov't's Mem. in Opp., at 2.)

Therefore, whether Defendant has shown a particularized need for the release of the grand jury minutes rises and falls, in its entirety, with whether the non-consent of the victim is an element of Aggravated Identity Theft.  If Defendant is correct that a victim's non-consent is an element of Aggravated Identity Theft, the grand jury minutes ought to be unsealed to ensure that the grand jury was properly instructed as to that element.  In contrast, if the consent of the victims has no bearing on a charge of Aggravated Identity Theft, Defendant has not shown a particularized need for the grand jury minutes.

Aggravated Identity Theft is codified in 18 U.S.C. § 1028A(a)(1).  It provides that whoever, during and in relation to a list of certain other felonies, "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person" shall be subject to an additional two-year prison sentence, to run consecutively with the sentence

7

imposed for the predicate felony. Section 1028(c) provides the list of predicate felonies, and Health Care Fraud is on it.

By its plain text, the statute does not require the non-consent of the individual whose identity the defendant transfers, uses, or possesses. Indeed, the case law is well-settled that the key inquiry is whether the defendant used the means of identification of another "without lawful authority," and that the consent of the victim has no bearing on that inquiry. See, e.g., United States v. Otuya, 720 F.3d 183, 189 (4th Cir. 2013) ("[N]o amount of consent from a co-conspirator can constitute 'lawful authority' to engage in the kind of deplorable conduct that Otuya engaged in here. Simply put, one does not have 'lawful authority' to consent to the commission of an unlawful act."), cert. denied, 134 S. Ct. 1279, 188 L. Ed. 2d 312 (2014); United States v. Retana, 641 F.3d 272, 274 (8th Cir. 2011) ("On one level, Retana's argument is simplistic: he had his father's permission and, therefore, did not commit the 'theft' of an identity . . . We reject this argument because § 1028A employs the term 'lawful authority' rather than the term 'permission.'").

Defendant sidesteps this line of cases by arguing that the non-consent of the victim bears not on the "without lawful authority" phrase of the statute, but rather the "of another person" phrase. According to Defendant, "the statutory requirement that the defendant use the identification of 'another

person' includes the requirement that the 'other person' 'did not consent' to the defendant's use of their identification." (Def's Reply, at 8.)

Defendant relies upon a recent decision by the United States Court of Appeals for the Seventh Circuit, United States v. Spears, 729 F.3d 753 (7th Cir. 2013). In Spears, the defendant created a counterfeit handgun permit for a client who, due to her criminal history, could not obtain a legitimate permit. 729 F.3d at 754. The counterfeit permit contained the client's own name and birthdate. Id. The defendant was convicted of Aggravated Identity Theft in violation of 18 U.S.C. § 1028A. Id. After two of his convictions were affirmed on appeal, the defendant was granted a rehearing en banc. Id. at 755. At his rehearing, the defendant argued that he did not transfer the means of identification "of another person," because he transferred the information of the transferee. Id. at 756. The court agreed, stating that while "[p]roviding a client with a bogus credential containing the client's own information is identity fraud," it was not identity theft; "no one's identity has been stolen or misappropriated." Id. at 756.

Central to the court's holding in Spears was the lack of an ascertainable victim. The court cited with approval the brief of the United States in Flores-Figueroa v. United States, 556 U.S. 656, 129 S. Ct. 1886, 173 L. Ed. 2d 853 (2009), which stated that

9

"the sine qua non of a Section 1028A(a)(1) offense is the presence of a real victim." 729 F.3d at 757. Thus, because the defendant's client could not be considered a victim, the defendant's crime fell outside the intended scope of 18 U.S.C. § 1028A. Id. at 758.

The allegations of this case are critically different than the facts of Spears. Unlike Spears, the individuals whose identities Defendant allegedly used to submit false Medicare claims were not co-conspirators; they were victims. Their information--though perhaps lawfully obtained at the outset--was allegedly misappropriated by Defendant for his own gain. The presence of real, ascertainable, and immediate victims renders the core reasoning behind the court's decision in Spears patently inapplicable here. At least one other United States district court has distinguished Spears on this ground. See United States v. McDonald, No. 14-CR-10033, 2014 WL 4071697, at *4 (D. Kan. Aug. 18, 2014) (distinguishing Spears because "there are victims in this case" (emphasis in original)).

Moreover, the purpose of the Aggravated Identity Theft statute is to "provid[e] enhanced protection for individuals whose identifying information is used to facilitate . . . crimes." Flores-Figueroa, 556 U.S. at 654, 129 S. Ct. at 1892, 173 L. Ed. at 861 (internal quotation marks omitted). In light of that purpose, it makes good sense that while the defendant's conduct in Spears must fall outside of the statute (there was no need to

10

protect defendant's client who had requested the counterfeit document in the first place), the conduct of which Defendant is accused must fall within. Assuming the Government's account of the facts to be true, the Medicare recipients whose means of identification Defendant misappropriated had no knowledge of, much less any role in, Defendant's scheme, and they surely deserve the enhanced protection that 18 U.S.C. § 1028A provides.

Accordingly, the Court finds that the non-consent of Defendant's purported patients--who are indisputably victims of Defendant's alleged crimes--is not an element of 18 U.S.C. § 1028A. While Spears demonstrates that there are imaginable factual circumstances where a different conclusion may be required, those facts are not before the Court.

In an abundance of caution, the Court has conducted an in camera review of the grand jury minutes. Anilao v. Spota, 918 F. Supp. 2d 157, 182 (E.D.N.Y. 2013) ("In camera review of grand jury materials allows an even more refined assessment of the delicate balance between justice and secrecy and thus a more accurately calibrated determination of whether the plaintiff states a particularized need under Douglas Oil." (internal quotation marks omitted)). In light of both the Court's conclusion that proof of the non-consent of Defendant's victims is not required to convict Defendant of Aggravated Identity Theft and its review of the instructions provided to the grand jury, the Court

concludes that the grand jury was properly instructed as to the elements of Aggravated Identity Theft as codified in 18 U.S.C. § 1028A(a)(1).

Accordingly, the Court finds that Defendant has not demonstrated a particularized need for the secrecy of the grand jury proceedings to be disturbed.

II. Motion to Dismiss Counts Four Through Six

For the same reasons that Defendant moves to unseal the minutes of the grand jury, Defendant also moves, in the alternative, to dismiss Counts Four through Six of the Superseding Indictment. Though an extreme sanction, United States v. Brown, 602 F.2d 1073, 1076 (2d Cir. 1979), an indictment may be dismissed where the Government's instruction on the applicable law was false or misleading. See, e.g., United States v. Peralta, 763 F. Supp. 14, 21 (S.D.N.Y. 1991).

Having already concluded that the grand jury was properly instructed as to the elements of Aggravated Identity Theft, the Court sees no reason to dismiss the Superseding Indictment as to those Counts.

[BOTTOM OF PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

For the foregoing reasons, Defendant's motion (Docket Entry 69) is DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: February  2 , 2015
       Central Islip, New York